HIRAM SHARP, Sr., plaintiff in error, *vs.* THOMAS BONNER, Sr., Administrator of W. S. Bonner, deceased, defendant in error.

NOTE.—WARNER, C. J., did not preside in this case.

When a verdict, fully sustained by the evidence, is set aside by the Court as against the weight of evidence, and a new trial is granted, this Court will reverse the judgment and allow the verdict to stand.

Assumpsit. Motion for new trial. Decided by Judge UNDERWOOD. Carroll Superior Court. April Term, 1867.

This was an action on a promissory note for $533.00, made the 5th February, 1860, by W. S. Bonner, payable to Hiram Sharp, Sr., or bearer, in specie, with ten per cent. interest *per annum*, and due one day after its date.

The defendant plead the general issue, *plene administravit*, and that the estate had become insolvent by emancipation of the slaves of deceased.

At the trial plaintiff read in evidence the note, and introduced THOMAS CHANDLER as a witness, who testified : that, as agent of plaintiff, about the 1st June, 1863, and within three or four months after administration granted, he called on said administrator, and notified him of said note, and told him that plaintiff had let deceased have gold for the note, and wished specie paid on the note.   He further testified that the administrator offered to pay Confederate Treasury notes, but they were refused ; gold and silver were not then circulating much ; Confederate Treasury notes were the principal circulation, and circulated about like bank-bills, that witness collected about $2,000.00 in Confederate money on debts due deceased, and that said administrator received the same from witness, that deceased had twelve or fifteen likely negroes about him reputed to be his ; administrator, in 1865, told witness he had notes and judgments belonging to deceased, sufficient to pay this debt, and offered them as collateral security.

Defendant examined as a witness, A. P. STEED, who was his son-in-law.   He testified : that W. S. Bonner died in summer of 1862, that he had taxable property worth from $20,000.00 to $30,000.00, that in the fall of 1862, specie had ceased to circulate, that deceased was a farmer and merchandized some, (he had but little land) that the administrator sold all the property except the negroes, for Confederate money, that it would not have been prudent to sell at that time for specie, property would not have brought anything in specie, and the administrator had the said negroes in possession at the time of their emancipation.

J. M. BLALOCK was introduced, who testified : that most of the perishable property of deceased was in Alabama, and sold by defendant by the advice of witness, who was the Ordinary of said county, that defendant returned no inventory of the estate, nor any sale bill ; but otherwise, had made his returns regularly.

Defendant then read in evidence all his returns, which were substantially as follows:

Amount received for 1862, $3,763.07; amount paid out 1862, $3,450.20. None was paid to any claim of higher dignity than a promissory note; part went to open accounts, part to defendant on settlement, and $39.50 to the widow towards support.

Amount received 1863, $3,159.69; amount paid out 1863, $3,724.17½. Of this, $1,149.89 was paid to the widow for a year's support, and the balance was paid to promissory notes and accounts.

Amount received in 1864, $4,074.90; amount paid out in 1864, $4,040.80. Of this, $33.50 was paid to the widow as advancement for that year, and the balance was paid to notes and open accounts.

Amount received in 1865, $1,870.00; amount paid out, $1,609.00. Of this, $991.00 was for the support of the widow, and the balance was paid for pork.

The evidence being closed, the Court charged the jury that if they found that the defendant had fully administered said estate, they should find against said defendant, as administrator, the amount due, to be levied of any effects that might thereafter come to his hands as administrator, that if they found the issue (on the plea of *plene administravit*) in favor of the plaintiff, then they should find the amount of the note against the defendant individually.

The verdict was for the face of the note with interest and costs of suit.

During the term a motion for new trial was made, and put only on the grounds that the verdict was contrary to law and the charge of the Court, and contrary to the evidence, and strongly and decidedly against the weight of the evidence.

The Court granted a new trial, and this is assigned as error.

CHANDLER, for plaintiff in error.

W. W. & H. F. MERRILL, for defendant in error.

Sharp *vs.* Bonner, adm'r.

WALKER, J.

We are satisfied that this administrator did what he thought was for the best; but in doing so, he has made himself liable to pay the plaintiff's debt.   It was his duty to make an inventory and appraisement of the effects of the estate, and return them to the Ordinary for record.   This he failed to do, and is therefore at fault, the entire consequences of which neglect it is not necessary now to determine.

While the statute authorized the administrator to receive Confederate notes for debts due the intestate, it did not compel him to do so.   In this case he was notified that plaintiff had loaned deceased gold, and would require specie in payment; indeed, the note promises to pay specie.   It was the duty of the administrator to collect the assets and pay the debts, and he should have seen to it, that debtors paid such funds as would answer this purpose, he was not bound to receive any thing in payment which would not answer the purposes of the estate.   Having received something that would not pay the plaintiff's debt, he must take the consequences so far as this debt is concerned.

Again, by what authority did he, from *year to year*, pay such large sums to the widow of the deceased.   It is true that she was entitled to a year's support, but that was never set apart for her as it should have been, and we cannot presume, without any proof, that so much as he paid her was necessary for that purpose.

The Legislature doubtless intended to relieve persons situated as this administrator is, except in one particular; and that is, he had already made himself liable to pay this debt by neglect, mismanagement and misapplication of the effects of the estate before the act of 1866.   In McIntosh vs. Hamilton, decided at December Term, 1866, we held an administrator liable under a state of facts very similar to the facts of this case.   Reiterating that we acquit this defendant of all intentional wrong, we hold, that according to law, he is clearly liable to pay this debt, and the Court erred in setting aside the verdict, and granting a new trial.

Judgment reversed.